FILED

MAY - 3 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DR. MELVIN G. PERRY, JR., <br> Plaintiff, | § <br> § SA18CA0404 XR <br> § |
| V. | § CIVIL ACTION NO. _____ <br> § |
| PEDIATRIC INPATIENT CRITICAL <br> CARE SERVICES, P.A., and VHS SAN <br> ANTONIO PARTNERS, LLC d/b/a <br> NORTH CENTRAL BAPTIST HOSPITAL, <br> Defendants. | § <br> § <br> § <br> § <br> § PLAINTIFF DEMANDS A JURY TRIAL. |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes DR. MELVIN G. PERRY, JR., hereinafter referred to as the Plaintiff or as DR. PERRY, complaining of PEDIATRIC INPATIENT CRITICAL CARE SERVICES, P.A. and VHS SAN ANTONIO PARTNERS, LLC d/b/a NORTH CENTRAL BAPTIST HOSPITAL, hereinafter referred to collectively as the Defendants, or individually as PICCS and NCBH, respectively, and as and for his causes of action against the Defendants, Plaintiff would respectfully show the Court as follows:

### NATURE OF THE CASE

(1)  This is a civil action brought by the Plaintiff, DR. MELVIN G. PERRY, JR., who alleges that he was subjected to a hostile working environment for almost two (2) years, and that his employment was eventually terminated, on or about January 12, 2017, because of his race and/or his sex and/or in retaliation for his having engaged in protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff also brings this civil action under the provisions of 42 U.S.C. § 1981, alleging that the Defendants discriminated against him, by denying

him the same right to make and enforce contracts as white persons, because of his race.

## JURISDICTION

(2) This Court has jurisdiction of this civil action under the provisions of 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5.

## VENUE

(3) Venue of this civil action is proper in this court inasmuch as the discriminatory and retaliatory acts alleged herein occurred within the Western District of Texas, San Antonio Division.

## PARTIES

(4) The Plaintiff, DR. MELVIN G. PERRY, JR., is an individual who currently resides in Mableton, Georgia, but who, at all times material and relevant hereto, resided in San Antonio, Bexar County, Texas. He is a Black or African-American male.

The Plaintiff, DR. PERRY, was an "employee" of both Defendants, as that term is defined at 42 U.S.C. § 2000e(f). He was employed by the Defendant PEDIATRIC INPATIENT CRITICAL CARE SERVICES, P.A. (PICCS) at North Central Baptist Hospital, in San Antonio, Bexar County, Texas, from on or about February 13, 2015 to on or about February 28, 2017.

(5) The Defendant, PEDIATRIC INPATIENT CRITICAL CARE SERVICES, P.A. (hereinafter referred to as PICCS), is a Texas professional association, and was, during the period from on or about February 13, 2015 to on or about February 28, 2017, DR. PERRY's "employer," as that term is defined at 42 U.S.C. § 2000e (b).

Said Defendant may be served with summons herein by delivering the same to its registered agent for service of process, Dr. Thomas Gowan, Jr., 19223 Stone Hue, Suite 117, San Antonio, Texas 78258.

(6)     The Defendant, VHS SAN ANTONIO PARTNERS, LLC (hereinafter referred to as NCBH), is a Texas limited liability corporation, doing business in San Antonio, Bexar County, Texas, as NORTH CENTRAL BAPTIST HOSPITAL. During the period from on or about February 13, 2015 to on or about February 28, 2017, NCBH was also DR. PERRY's "employer," as that term is defined at 42 U.S.C. § 2000e (b).

Said Defendant may be served with summons herein by delivering the same to its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

(7)     The Plaintiff, DR. PERRY, alleges that PICCS and NCBH were "joint employers" and/or constituted a "single integrated enterprise," as those terms have been defined by the courts in the context of determining the liability of one or more related entities for acts in violation of Title VII and/or Section 1981.

(8)     For purposes of applying the provisions of 42 U.S.C. § 1981a, DR. PERRY alleges that the Defendant NCBH, during the relevant time period, employed more than 500 employees in each of 20 or more calendar weeks.

## FACTS

(9)     On or about February 13, 2015, PICCS and DR. PERRY entered into a Professional Services Agreement whereby PICCS agreed to employ DR. PERRY, and DR. PERRY agreed to provide professional medical services to PICCS, including pediatric intensive care services, and was assigned to work at NCBH's Pediatric Critical Care Unit.  Services under the Agreement commenced on or abut March 1, 2015.

(10)    Pursuant to the Professional Services Agreement between PICCS and DR. PERRY,

3

DR. PERRY also signed a Physician Agreement, whereby he agreed to be bound by NCBH's Medical Staff Bylaws and the Rules and Regulations of the Hospital and/or its Medical Staff.

(11)  The Professional Services Agreement described the relationship between PICCS and DR. PERRY as an independent contractor relationship, but, in reality, DR. PERRY was PICCS' employee and PICCS was his employer. Pursuant to the Agreement, DR. PERRY agreed to provide call coverage services and to render professional medical services in the speciality of pediatric critical care medicine exclusively for and on PICCS' behalf, pursuant to its agreement with NCBH, on a schedule determined by PICCS.  Pursuant to the Agreement between PICCS and DR. PERRY, DR. PERRY also agreed to devote his full and undivided professional time and attention to the practice of medicine for PICCS and in furtherance of PICCS' interests. He agreed not to provide professional medical services for compensation to any other person or entity without PICCS' written consent.

(12)  The characterization of the relationship between PICCS and DR. PERRY as an independent contractor relationship was intended to insulate PICCS from liability for the acts of DR. PERRY as its agent and was not intended to negate the existence of an employer-employee relationship for purposes of Title VII or 42 U.S.C. § 1981.

(13)  Pursuant to its agreement with PICCS, NCBH paid PICCS a fee for DR. PERRY's services, and PICCS, in turn, paid DR. PERRY.

(14)  DR. PERRY's point of contact at PICCS was Dr. Hugo Carvajal, President of PICCS, but his supervisor at NCBH was another employee of PICCS, Dr. Nelson Chavez, Medical Director of the Pediatric Critical Care Unit. Both Dr. Carvajal and Dr. Chavez are Hispanic males.

(15)  At or about the same time DR. PERRY began working at NCBH, PICCS hired and

assigned two (2) other physicians to work as Pediatric Intensive Care Specialists at NCBH, Sandra Aviles and Lorena Fernandez-Restrepo, both of whom are Hispanic females.

(16)   In his role as a physician assigned to the Pediatric Critical Care Unit at NCBH, DR. PERRY was required to, and did, work closely with the nursing staff assigned to the Unit. Ms. Nayomy Figueroa, an Hispanic female, was the Director of Pediatric Services, and she supervised the Pediatric Critical Care Unit, the Sedation Unit, and the general pediatric floor nurses, including Nicole Lewis, a White female; Hannah Vickers, a White female; Amy Everling, a White female; Nancy Gonzalez, an Hispanic female; and Andrea Lehman, a White female.

(17)   During an interview with the nursing staff at NCBH, prior to his acceptance by and assignment to NCBH, DR. PERRY was inappropriately referred to by Nicole Lewis as "chocolate eye candy." DR. PERRY complained about Ms. Lewis' comment to both NCBH (Nayomy Figueroa) and PICCS (Nelson Chavez). Although he complained that Ms. Lewis' comment was both racist and sexist, Ms. Lewis was apparently not chastened because she repeated the comment to DR. PERRY and others on several subsequent occasions. She and Hannah Vickers also frequently used racially tinged slang words or phrases in addressing DR. PERRY or in referring to him. He complained to both NCBH and PICCS about their use of slang in addressing him, to no avail.

(18)   In October of 2016, Dr. Aviles joined a group of NCBH nurses in accusing DR. PERRY of racial bias or prejudice (in favor of Blacks or African-Americans and/or against non-Blacks or non African-Americans). In addition, Dr. Fernandez Restrepo, as well as several of the NCBH nurses, on more than one occasion, questioned DR. PERRY in regard to his sexual orientation, and several of the nurses frequently made homophobic comments in DR. PERRY's presence. Both Dr. Aviles and Dr. Fernandez complained to DR. PERRY on more than one occasion

that Dr. Janet Rowe, an African-American female also assigned to NCBH, was incompetent and was "going to kill a patient one day." They made similar complaints and comments about Dr. Mustafa Nimir, a Black or African-American male, and Dr. Amanda Dove, a Black or African-American female. Dr. Aviles, Nicole Lewis, and Hannah Vickers, also referred to Dr. Rowe and Dr. Dove on occasion as "that black bitch."

(19)  On or about March 1, 2015, DR. PERRY began providing the services contemplated by the Professional Services Agreement, and from on or about March 1, 2015 to on or about February 28, 2017, DR. PERRY provided professional medical services to PICCS and NCBH and performed his duties and responsibilities to NCBH and its patients in an exemplary fashion.

(20)  However, on or about January 20, 2016, DR. PERRY received a letter from NCBH's Medical Staff Quality and Peer Review Committee notifying him that it was reviewing an "incident" which had occurred on or about November 5, 2015. DR. PERRY attributed that review to complaints made about him by the NCBH nurses who took issue with his objection to their racist and sexist behavior and comments. On April 6, 2016, DR. PERRY was notified that, after review, "The committee did not identify any issues related to the quality of care or services provided to this patient."

(21)  After several additional months of enduring offensive racial and sexual comments, as well as the nurses ignoring his authority as the physician, on October 24, 2016, DR. PERRY submitted a memorandum to Nayomy Figueroa, the Director of Pediatric Services at NCBH, relating concerns he had previously stated to her orally that several of the Pediatric Intensive Care Unit (PICU) nurses were exceeding the scope of their roles as bedside nurses. In particular, DR. PERRY complained to Ms. Figueroa that Hannah Vickers had inappropriately shared information regarding

a patient under his care with a Child Protective Services case worker. DR. PERRY also complained that Ms. Vickers had secured a bed for the patient at another facility without his or the Hospital's authorization. He attributed the nurses' behavior, in part, to a lack of respect for the physicians they worked with, including him.

(22)  On October 26, 2016, DR. PERRY submitted a memorandum to Kendall Turton, NCBH's Director of Human Resources, complaining to Mr. Turton that the NCBH nursing staff had stated to Dr. Aviles that he was inappropriately trying to help the mother of one of his patients because both he and the mother are Black, and that Dr. Aviles had adopted the nurses' position on that subject.

(23)  On or about November 14, 2016, five (5) nurses, including several of the nurses who DR. PERRY had complained had falsely accused him of racial bias or prejudice, confronted Ms. Figueroa and threatened that, if DR. PERRY was not removed from his position at NCBH, they would quit their jobs at the Hospital. Those same nurses also sent an e-mail message to Dr. Dana Kellis, Chief Medical Officer at NCBH, demanding that DR. PERRY be fired, or they would quit.

(24)  On or about November 15, 2016, DR. PERRY was notified by the Baptist Health System's Department of Pediatric Medicine Committee that it was reviewing another case in which he was the physician who provided care to a patient on November 9, 2016.

(25)  On December 6, 2016, Dr. Aviles wrote Dr. Chavez a letter complaining about DR. PERRY's behavior on three (3) different occasions - November 30, 2016, December 3, 2016, and December 4, 2016 - and advised Dr. Chavez, "[I]f this current situation does not improve, I will refuse to work with Melvin again."

(26)  On December 28, 2016, the Department of Pediatric Medicine Committee advised

DR. PERRY that, after reviewing the case of the patient cared for by him on November 9, 2016, his care was found to be within the standard of care.

(27) On January 12, 2017, Dr. Carvajal, President of PICCS, advised DR. PERRY by letter that the Professional Services Agreement between PICCS and him was being terminated, without cause, effective 90 days thereafter, at which time his employment with PICCS would be terminated. DR. PERRY continued to work at NCBH until on or about February 28, 2017, at which time his privileges at NCBH expired and his employment was terminated. No reason for termination was stated by Dr. Carvajal.

(28) On May 18, 2017, DR. PERRY filed charges of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against both PICCS and NCBH, and, on February 28, 2018, notices of right to sue were issued by the EEOC. This civil action is being timely filed.

## CAUSES OF ACTION

(29) DR. PERRY now brings this civil action against PICCS and NCBH, alleging that he was subjected to a hostile working environment based upon both his race and his sex, and that he was discharged on January 12, 2017 because of his race and his sex and because he complained about the racist and sexist environment in which he was forced to work, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. As relief, DR. PERRY seeks all remedies available to him under Title VII, including but not limited to reinstatement, front pay in lieu of reinstatement, back pay, compensatory damages, punitive damages, costs of court and attorney's fees.

(30) DR. PERRY also brings this civil action against PICCS and NCBH, alleging that he was subjected to a hostile working environment, based upon his race, and that he was discharged on

January 12, 2017 because of his race and because he complained about the racist environment in which he was forced to work, in violation of 42 U.S.C. § 1981. As relief, DR. PERRY seeks all remedies available to him under 42 U.S.C. § 1981, including but not limited to reinstatement, front pay in lieu of reinstatement, back pay, compensatory damages, punitive damages, costs of court and attorney's fees.

## JURY DEMAND

(31)   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial of this civil action.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, DR. MELVIN G. PERRY, JR. respectfully prays that summons be duly issued and served upon the Defendants, PEDIATRIC INPATIENT CRITICAL CARE SERVICES, P.A., and VHS SAN ANTONIO PARTNERS, LLC d/b/a NORTH CENTRAL BAPTIST HOSPITAL, and that, upon final hearing hereof, he shall have and recover judgment of and from said Defendants for the relief requested hereinabove, and for such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

GLEN D. MANGUM
Texas State Bar No. 12903700

315 E. Euclid
San Antonio, Texas 78212-4709
Telephone No. (210) 227-3666
Telecopier No. (210) 595-8340
E-mail: gmangum@sbcglobal.net

**ATTORNEY FOR PLAINTIFF
DR. MELVIN G. PERRY, JR.**