**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. MELVIN G. PERRY, JR., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No.  SA-18-CV-404-XR |
| PEDIATRIC INPATIENT CRITICAL | § | |
| CARE SERVICES, P.A., | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Plaintiff's motion *in limine* (ECF No. 109), Defendant's response (ECF No. 112), and the parties' arguments at the hearing held on September 13, 2022. After careful consideration, the Court issues the following order.

## BACKGROUND

This action arises out of Plaintiff Melvin Perry's allegedly wrongful termination from his position as a pediatric intensivist at North Central Baptist Hospital (the "Hospital") by Pediatric Inpatient Critical Care Services, P.A. ("PICCS") in early 2017. Plaintiff alleges claims for race discrimination and retaliation under 42 U.S.C. § 1981. *See* ECF No. 28. Plaintiff now seeks to exclude from trial evidence of (1) his July 2022 arrest for allegedly assaulting a paramedic and (2) other lawsuits to which he has been a party involving companies or employers who are not parties to this case. ECF No. 109 at 2–4. Plaintiff argues that these topics are not relevant to the parties or issues in this case and instead constitute inadmissible character evidence under Rule 404. To the extent that the evidence is relevant, Plaintiff asserts that it should nonetheless be excluded under Rule 403 because it creates a risk of unfair prejudice.

**DISCUSSION**

**I.      Legal Standard**

Evidence is only relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Relevant evidence must be excluded, however, when its probative value is "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. District courts have broad discretion in assessing admissibility of relevant evidence under Rule 403. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299–300 (5th Cir. 2005).

Based on the assumption that character evidence is of "slight probative value yet very prejudicial," Rule 404 "embodies the well-settled principle that evidence of a person's character is usually not admissible for the purpose of proving that the person acted in conformity with his character on a particular occasion." *Reyes v. Mo. Pac. R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979); *see* FED. R. EVID. 404(a). Character evidence may nonetheless be admitted for the purposes of impeaching a witness's credibility under Rules 607, 608, and 609. Rule 404 likewise provides that crimes, wrongs, or acts cannot be used to show that "on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such "other acts evidence" may be admissible if it offered for another purpose, however, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. FED. R. EVID. 404(b)(2).

"An analysis of the admissibility of character evidence necessarily begins, then, with an examination of the purposes for which the evidence is proffered." *Reyes*, 589 F.2d at 794. If the

evidence is introduced for the purpose of showing that a person acted in accordance with his character on a given occasion, then the evidence is inadmissible unless it falls within one of the exceptions noted in Rule 404. *Id.*

## II.      Analysis

### A.      Evidence of 2022 Arrest

Plaintiff was arrested in Georgia July 2022 for allegedly lunging at a paramedic during a dispute over a patient's care. See ECF No. 112-2 (Criminal Warrant) at 2. The criminal warrant later issued in connection with the incident alleges that he retrieved a metal oxygen tank and swung it repeatedly during the altercation, requiring firefighters and other EMTs to stop the altercation before the police arrived. *Id.* Plaintiff argues that his arrest for alleged crimes in a different state over five years after his termination is irrelevant to the merits of this case. To the extent that Defendant intends to use the arrest to show that his conduct in 2016 and 2017 was inappropriate or endangered patient safety, the Court agrees that the arrest is inadmissible. There is no evidence, for example, that Plaintiff was terminated from the Hospital in 2017 for jeopardizing patient care and safety by engaging in physical violence.

Defendant asserts that this arrest, which was "reported extensively in media," is otherwise admissible because it is relevant to Plaintiff's claim for damages. Specifically, the evidence casts doubt on the feasibility of reinstatement and bears on "the impact that such an alleged display has or has had on Plaintiff's reputation in the community and subsequent ability to earn." ECF No. 112 at 2, 4. Plaintiff responds that such evidence is irrelevant because he is "operating his business, able to see patients, and be paid for his work" and that damages are not one of the permitted uses of "other acts evidence" under Rule 404(b). ECF No. 109 at 3. Finally, Plaintiff submits that even

if the arrest were relevant to the question of damages, it would only bear on front pay, which is not a jury question. *Id.*

Defendant submits that Plaintiff's arrest is relevant to the feasibility of reinstatement because PICCS's coverage agreement with the Hospital "makes clear that conviction of a crime relating to medical care is grounds for ending the contract unless the offending physician is excluded from performing work or services thereunder." ECF No. 112 at 3–4. Plaintiff's professional services agreement likewise contained a provision authorizing Defendant to terminate the contract if he is convicted of a felony or crime of moral turpitude or otherwise conducts himself in a manner PICCS determines to be unethical, unprofessional, unlawful, or fraudulent. *Id.*

The probative value of Plaintiff's arrest on the feasibility of reinstatement is quite limited. First, the provisions cited in Defendant's response are generally inapplicable given that Plaintiff has yet to be convicted of a crime. More importantly, Plaintiff does not appear to dispute that reinstatement is not feasible. *See* ECF No. 93-5, Perry Dep. at 265:7–8 (conceding that reinstatement would be "impossible" because he has opened his own practice).

"While reinstatement is generally the preferred remedy for a discriminatory discharge," front pay may be awarded where reinstatement is not feasible. *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1989). Because the publicity surrounding the arrest in Georgia may have impacted Plaintiff's business prospects, the arrest may have some relevance to his claims for front pay (and for back pay for the period between his arrest and the date of the judgment in this case, if any). The Court concludes, however, that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. *See, e.g.*, *Tate v. Zaleski*, 2021 WL 5811965 at *4 (S.D. Miss. Dec. 7, 2011) ("[A]ny relevance of the evidence relating to the arrest of Dr. Zaleski [for domestic violence] is substantially outweighed by the danger of unfair

prejudice, confusing the issues, and misleading the jury" in case involving sex discrimination."); *Bishop Ins. Agency LLC v. Bishop Ins. Serv. PLLC*, No. 1:18-cv-350-HSO-JCG, 2020 WL 11191746, at *2 (S.D. Miss. July 29, 2020) (excluding evidence of plaintiff's DUI-related criminal arrests because reference to this evidence did not go to "proving motive, opportunity [or] intent" and, even if it were otherwise admissible, any probative value is substantially outweighed by the "dangers of unfair prejudice, confusing the issues, and misleading the jury"). Accordingly, Plaintiff's motion to exclude evidence relating to the arrest is **GRANTED**.

## B.      Evidence of Other Lawsuits

While Plaintiff's motion does not identify the other lawsuits he seeks to exclude from evidence, counsel clarified at the September 13, 2022 hearing that Plaintiff was involved in a race discrimination case against a company in Georgia that was later dismissed on summary judgment and previously filed charges against two other entities alleging race discrimination in 2006 and 2007. Defendant argues that the allegations of race discrimination against other entities are relevant and admissible for the purpose of establishing Plaintiff's modus operandi and casting doubt on his claim for emotional damages in this case. ECF No. 112 at 6–10.

Defendant suggests that evidence of Plaintiff's previous allegations is admissible as habit evidence under Rule 406. *See* ECF No. 112 at 6 n.2. In contrast with the general exclusionary principles of Rule 404, Rule 406 permits the introduction of habit evidence for the purpose of proving that the person acted in conformity with his habit on a particular occasion. FED. R. EVID. 406. "Habit evidence is considered to be highly probative and therefore superior to character evidence because 'the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character or disposition.'" *Reyes*, 589 F.2d at 794 (quoting

McCormick on Evidence § 195 at 463 (2d ed. 1972)). The line between habit evidence and character evidence is not always easy to discern:

> Character and habit are close akin. Character is a generalized description of one's disposition, or one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. "Habit," in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.

*Id.* (quoting McCormick on Evidence § 195 at 462–63 (2d ed. 1972)); *see also* Paul F. Rothstein, Federal Rules of Evidence Rule 404 (3d ed. Feb. 2018) ("Habit or routine practice, like character, describes a propensity, but it involves more regular, very specific, somewhat involuntary responses to a repeated situation.").

The Fifth Circuit addressed the boundary between character evidence and habit evidence in *Reyes*. 589 F.2d at 793–94. Reyes was struck by a train as he lay on the railroad tracks near a crossing in Brownsville, Texas, alleging that he had been knocked unconscious by an unknown assailant. *Id.* at 792. He sued the railroad company, alleging that its employees were negligent in failing to discover plaintiff as he lay on the tracks and stop the train in time to avoid the accident. *Id.* The railroad alleged that Reyes was contributorily negligent because he was intoxicated on the night of the accident and passed out on the tracks before the train arrived. *Id.* Reyes filed a motion in limine, seeking to exclude evidence relating to his prior misdemeanor convictions for public intoxication. *Id.* The Fifth Circuit found "[t]he suggestion that the prior convictions constituted evidence of Reyes' 'habit' of excessive drinking . . . unpersuasive":

> We do not undertake here to prescribe the precise quantum of proof necessary to transform a general disposition for excessive drinking into a "habit" of

6

intemperance; we simply find that four prior convictions for public intoxication spanning a three and one-half year period are of insufficient regularity to rise to the level of "habit" evidence.

589 F.2d at 793–94.

As in *Reyes*, the Court concludes that Plaintiff's four allegations of race discrimination in a period of approximately sixteen years are of insufficient regularity to rise to the level of habit evidence. Defendant asserts that "[c]ourts have also found a plaintiff's past filings or frivolous claims related to racial discrimination, harassment, or hostile work environment weighs on plaintiff's credibility and may be compelling to admit at trial." ECF No. 112 at 8 (citing *Bruno-Ponthier v. United Parcel Serv.*, No. 06-31-B-M2, 2007 WL 9701297, at * 2 (M.D. La. Mar. 7, 2007)). Defendant's citation to *Bruno-Ponthier* is inapposite, however, because that case involved a discovery motion, not a motion in limine. Indeed, in denying the plaintiff's motion to quash discovery relating to her prior allegations of sexual harassment, the trial court explicitly refrained from opining on the admissibility of such evidence: "Ponthier's arguments relating to the admissibility of the discovery at issue under the Federal Rules of Evidence are premature and do not constitute reasons for quashing the depositions in question." *Bruno-Ponthier*, 2007 WL 9701297, at * 2.

As a logical matter, Plaintiff's allegations of race discrimination against other entities are only relevant to his modus operandi if Defendant can establish that they were unfounded. That is, valid accusations of discrimination would not tend to establish Plaintiff's "vindictive state of mind regarding his employers." *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998) (evidence of prior lawsuits against employers were relevant and admissible because they demonstrated plaintiff's motive, state of mind, credibility, *modus operandi*, and cast doubt on plaintiff's claim for emotional damages). Defendant cannot prove that Plaintiff's previous complaints were frivolous, however, without resorting to a mini-trial on the merits of each

accusation, which would create a substantial risk of confusing the issues, misleading the jury, and wasting judicial resources. *See* FED. R. EVID. 403. In short, Plaintiff's allegations of race discrimination against other entities are not admissible as habit evidence or to otherwise establish his propensity to complain of race discrimination. *See Gastineau*, 137 F.3d at 496 ("the evidence must tend to show something other than a plaintiff's tendency to sue"); *Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988) ("The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent.").

Still, the Court agrees with Defendant that the jury should be allowed to determine the extent to which any alleged mental anguish was caused by Defendant's alleged conduct as opposed to the alleged conduct of other persons/entities that Plaintiff has accused of discrimination since his termination in 2017. Accordingly, evidence of post-termination race discrimination Plaintiff has allegedly experienced by entities other than PICCS is admissible for the purpose of assessing his claims for mental anguish in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion in limine (ECF No. 109) is **GRANTED IN PART** as to evidence of Plaintiff's July 2022 arrest and **DENIED IN PART** as to evidence of his allegations of race discrimination against other entities. Defendant may ask Plaintiff about discrimination he allegedly experienced following his termination in 2017 in connection with Plaintiff's claim for mental anguish. Defendant may not, however, refer to the charges of discrimination against other entities filed *before* Plaintiff's termination or to the outcome of any lawsuit filed *after* his termination from PICCS.

All rulings on the motions in limine are preliminary and are not final evidentiary rulings. To the extent the Court grants a motion in limine, the parties are instructed to approach the bench before addressing the issue in the jury's presence.

It is so **ORDERED**.

**SIGNED** this 23rd day of September, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

¶

9